IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01080-RM-MEH

POPSOCKETS LLC,

      Plaintiff,

v.

LORA SUZANNE WILCOX,
BRADLEY JAMES WILCOX, and
JOHN DOES 1-10,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court are Defendants' Motion to Dismiss [ECF 15] and Plaintiff's Motion for Leave to File Sur-Reply [ECF 40]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. COLO. L.Civ.R. 72.1(c), the motions have been referred to this Court for a report and recommendation.

For its Complaint, Plaintiff alleges Defendants' sale of PopSocket products through the website, Amazon.com, (1) violates the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125, regarding trademark infringement; (2) violates 15 U.S.C. § 1125(a)(1)(A) regarding unfair competition; (3) violates 15 U.S.C. § 1125(a)(1)(B) regarding false advertising; (4) constitutes common law trademark infringement; (5) constitutes common law unfair competition; (6) is a deceptive trade practice in violation of Colo. Rev. Stat. § 6-1-105; and (7) tortiously interferes with Plaintiff's contract and business relations. *See* Am. Compl., ECF 15. The matters are briefed to the extent required by law, and the Court finds that oral argument will not assist with the adjudication of the motions. For the reasons that follow, the Court recommends that the Honorable

Raymond P. Moore deny Defendants' motion to dismiss and deny as moot Plaintiff's motion for leave to file surreply.

## I.      Procedural History

Defendants filed the present motion to dismiss on May 29, 2019. Defendants proceed *pro se* in this action and titled the motion, "Defendants['] Motion to Dismiss for Lack of *Subject Matter* Jurisdiction." ECF 15.  However, the introductory paragraph and the arguments therein seek an order dismissing the complaint "for lack of personal jurisdiction." *Id.* at 1.  Additionally, during the scheduling conference held June 13, 2019 [ECF 29], the Court clarified with Defendants that they intended to seek dismissal for lack of personal jurisdiction.  Furthermore, Defendants' amended reply brief states, "The motion should be properly captioned and corrected to read 'Defendants [sic] Motion to Dismiss for Lack of Personal Jurisdiction." *See* Am. Reply Br., ECF 40.  Thus, the motion will be analyzed pursuant to Fed. R. Civ. P. 12(b)(2).

Additionally, Defendants attack the plausibility of Plaintiff's allegations; although not specifically styled as a motion to dismiss for failure to state a claim, Defendants' plausibility arguments are so evident that Plaintiff inferred from the motion a request to dismiss the complaint for failure to state a claim and addressed Defendants' arguments on that basis.  Resp. 8, ECF 27.  In light of the Defendants' *pro se* status, the Court will also construe the motion to include a request to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

After the motion to dismiss was fully briefed, Plaintiff filed the present motion for leave to file surreply on September 4, 2019.  Both motions are before the Court and will be addressed in this Recommendation.

## II.     Statement of Facts

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in its Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(2) pursuant to *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998) and under 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff manufactures and sells grips/stands, mounts, and other accessories for mobile devices.  Am. Compl. ¶ 7, ECF 8.  Plaintiff's brand name and logos are recognized by consumers, and its name is associated with high quality, reliable, and durable products.  *Id.* ¶ 12.  Plaintiff sells its products exclusively through its own website and through a network of authorized distributors and resellers.  *Id.* ¶ 8.  For the purpose of protecting its respective brand, Plaintiff has registered trademarks with the United States Patent and Trademark Office ("PTO").  *Id.* ¶ 9.  Through its extensive quality control processes, Plaintiff ensures the safety and satisfaction of customers and maintains the integrity of its positive business reputation.  *Id.* ¶ 8.  However, the explosion of internet retail sales has made it difficult for Plaintiff to monitor the unauthorized sale of its products through online markets, such as Amazon.com.  *Id.* ¶¶ 16-18.  Accordingly, Plaintiff audits its authorized online sellers to ensure they conform to Plaintiff's strict quality control requirements.  *Id.* ¶ 58.  For example, to be considered an authorized seller, the genuine products sold are required to have a limited warranty.  *Id.* ¶ 69.  Plaintiff asserts that its quality controls and the existence of a warranty are material for consumer satisfaction.  *Id.* ¶¶ 73-74.

Defendants have sold Plaintiff's products through their online marketplace on Amazon.com under the storefront names "Planoseller 2" and "TexasDeals2."  *Id.* ¶ 106.  Defendants are not authorized sellers, and the products they sell are not subject to Plaintiff's quality

control system and do not come with a warranty. *Id.* ¶¶ 108-109. However, through Amazon.com, Defendants advertise the products they are selling as "new." *Id.* ¶ 139. "New" products on Amazon.com are required to come with the "original manufacturer's warranty." *Id.*

Consumers of Plaintiff's products have submitted numerous negative reviews on Amazon.com, and Plaintiff attributes at least some of the negative reviews to Defendants' sales.[1] *Id.* ¶¶ 34-52. These negative reviews have caused damage to Plaintiff's reputation and sales. *Id* ¶ 55. Plaintiff sent multiple cease and desist letters informing Defendants that their conduct was harming Plaintiff in Colorado. *Id.* ¶¶ 143-144. Plaintiff's attempts to resolve this matter prior to filing this suit were unsuccessful. *Id* ¶ 148.

## III. Legal Standards

### A. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2)

"Jurisdiction to resolve cases on the merits requires ... authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). When no evidentiary hearing is held "the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *see also Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 900 (10th Cir. 2017). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc.*, 149 F.3d at 1091 (10th Cir. 1998); *see also Old Republic Ins. Co.*, 877 F.3d at 900.

---

[1] The website, Amazon.com, allows customers to see only the reviews of a certain product, not specifically which seller sold the product. Therefore, it is impossible to determine which seller elicited the negative review, and the negative review is imputed to the product as a whole. ECF 15 ¶ 54.

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted). "[T]o defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (citation and internal quotations omitted).

    B.    <u>Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged

their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

C.    Treatment of a *Pro Se* Party's Filings

If Defendants are proceeding without counsel, the Court must construe the pleadings and other filings liberally. *See Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). Additionally:

> Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal

category .... to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis.

*Castro v. United States,* 540 U.S. 375, 381–82 (2003).

## IV.   Analysis

When a defendant seeks dismissal for both lack of jurisdiction and failure to state a claim, courts typically must decide first the jurisdiction question, since the Rule 12(b)(6) challenge would be moot if the court lacked personal jurisdiction. *See Manchus v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

### A.   Personal Jurisdiction Over the Defendants

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 134 (2014). The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see* Fed. R. Civ. P. 4(k)(1)(A). Colorado's long-arm statute, Colo. Rev. Stat. § 13–1–124, extends jurisdiction to the Constitution's full extent. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004); *Mr. Steak, Inc. v. District Court*, 194 Colo. 519, 574 P.2d 95, 96 (1978) (en banc). Thus, the personal jurisdiction analysis here is a single due process inquiry. *See Benton*, 375 F.3d at 1075.

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted). If the defendant has sufficient contacts, the court

7

then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *Id.* (citations omitted). "This analysis is fact specific." *ClearOne Commc'ns., Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

       1.    *Minimum Contacts*

The "minimum contacts" test may be met pursuant to either of two ways – general jurisdiction or specific jurisdiction. Plaintiff in this case has asserted the Court's specific personal jurisdiction over the Defendants.  Resp. 4, 7.  The Supreme Court has articulated the criteria for establishing specific jurisdiction as follows: "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the defendant *himself* creates with the forum State"... with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) and *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 319 (1945)).  The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connections with the forum State" to support the basis for specific jurisdiction. *Id.* at 285 (citing *Burger King*, 471 U.S. at 478).

Accordingly, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the

state's residents if the cause of action arises out of those activities. *Burger King Corp.*, 471 U.S. at 472-73. Thus, "[u]nder the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *Bartile Roofs, Inc.*, 618 F.3d at 1160; *see also Benton* 375 F.3d at 1076 ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") (internal quotation marks and citation omitted).

      a.      Did the Defendants Purposefully Direct Activities at Colorado's Residents?

To establish purposeful direction, a plaintiff must demonstrate more than mere foreseeability of causing injury in another state. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017) (citing *Burger King*, 471 U.S. at 474). The plaintiff's demonstration will succeed "where the defendant deliberately has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there." *Id.*

In cases involving sales transactions over the internet, courts have held that a defendant's use of a website to conduct business in the forum state, such as having a website that a customer in the forum state can access and on which the customer can purchase the alleged infringing product, provides a basis for a court's exercise of personal jurisdiction. *See Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F. Supp. 2d 824, 837-38 (N. D. Ill. 2000); *Stomp, Inc. v. NeatO, LLC,* 61 F. Supp. 2d 1074, 1078-81 (C. D. Cal. 1999); *Park Inns Int'l, Inc. v. Pac. Plaza Hotels, Inc.,* 5 F. Supp. 2d 762, 763-65 (D. Ariz. 1998). In fact, in a recent opinion, involving mostly

identical allegations and facts, the Honorable David M. Ebel, sitting at the District level, found personal jurisdiction over the non-resident defendants where the plaintiffs asserted the defendants sold alleged infringing products over the internet, despite the fact that defendants claimed the plaintiffs themselves elicited the sale of the products to the forum state. *Otter Prods., LLC v. Big Birds, LLC*, No. 19-cv-00626-DME (D. Colo. Aug. 9, 2019) (copy attached); *see also Otter Products, LLC v. Phone Rehab*, *LLC*, 19-cv-00206-RM-MEH, 2019 WL 4736462, (D. Colo. Sept. 27, 2019).

In this case, the Plaintiff has demonstrated sufficient purposeful activity directed at Colorado.  This includes the sale and shipment of the alleged infringing products to Colorado. Plaintiff specifically alleges that it "caused a product to be purchased from the 'Planoseller2' storefront, and the product that was received listed [Defendants' address as the return address.]" Am. Compl. ¶ 142, ECF 8.  Defendants argue that "Plaintiff has attempted to 'manufacture' contacts in Colorado by ordering PopSockets."  Am. Reply ECF 41 at 14.  However, Judge Ebel addressed this very issue and held that a sale to the forum state, even to a plaintiff or its counsel, is sufficient to establish personal jurisdiction. *See Big Birds, supra* ("Defendants contend that it was Plaintiffs themselves who made all these purchases. Even if that is so, Defendants still voluntarily and knowingly made these sales to a Colorado resident, thus purposely directing their activity to Colorado; these sales cannot be said to be the result of Otter's *unilateral* actions.") (emphasis in original); *see also Cornice Techs., Inc., v. Affinity Dental Products, Inc.*, No. 04-cv-01133-EWN, 2005 WL 1712124, at *6 (D. Colo. July 21, 2005) (although product was sold to agent of plaintiff, court concluded "it is a reasonable inference that [defendant] has sold other allegedly infringing products in Colorado"). Therefore, this Court recommends Judge Moore find the Defendants purposely directed their activities to Colorado.

b.      Did Plaintiff's Injuries Arise out of Defendants' Forum-Related Activities?

The assertion of specific jurisdiction also requires that a plaintiff prove its injuries "ar[o]se out of' [the] defendant's forum-related activities." *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016) (quoting *Dudnikov*, 514 F.3d at 1071); *see also Bartile Roofs, Inc.*, 618 F.3d at 1160 (a plaintiff must show "the litigation results from the alleged injuries that arise out of or relate to those activities."). Courts have interpreted this language to require "some sort of" causal connection between a defendant's contacts and the plaintiff's claims. *Dudnikov* 514 F.3d at 1078. According to the Tenth Circuit, "[s]pecific jurisdiction is premised on something of a *quid pro quo:* in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Id.*  In *Dudnikov*, rather than identify a specific causation test by which to determine the second prong, the court determined that the plaintiff sufficiently met both the but-for and the proximate causation tests to support a determination that the plaintiffs' cause of action arose from the defendants' contact(s) with Colorado. *Id.* at 1079.

At least one court in this Circuit found that the receipt of a cease and desist letter was sufficient to put a defendant on notice that the brunt of the alleged injury would be felt by the plaintiff in the forum state, but absent a showing of continued sales of the alleged infringing product to the forum state after such notice, the court found an insufficient basis on which to assert specific personal jurisdiction. *See Tomelleri v. MEDL Mobile, Inc.*, No. 14-cv-02113-JAR, 2015 WL 1957801, at *6 (D. Kan. Apr. 29, 2015), *aff'd*, 657 F. App'x 793 (10th Cir. 2016).  Here, by contrast, Plaintiff alleges that it sent multiple cease and desist letters in February and March 2019 informing Defendants that their conduct was harming the Plaintiff in Colorado. The Defendants allegedly ignored Plaintiff's letters and attempts to resolve this matter, and continued to sell the

alleged infringing products to Colorado. The Court finds that the conduct eliciting the cease and desist letters is the same conduct alleged to have caused Plaintiff's injuries in this case; that is, but for Defendants' continued sales of the alleged infringing products to Colorado, Plaintiff would suffer no injury. Thus, Plaintiff has met the second prong necessary to establish specific personal jurisdiction.

This Court recommends that Judge Moore find Plaintiff has shown Defendants' conduct satisfies minimum contacts with Colorado by demonstrating the Defendants purposefully directed their activities at Colorado's residents and Plaintiff's cause of action arises out of those activities.

2.   *Traditional Notions of Fair Play and Substantial Justice*

In addition to examining a defendant's minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" in this case. *ClearOne Commc'ns., Inc.*, 643 F.3d at 764. This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Id.* In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

Defendants "bear[ ] the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Emp'rs Mut. Cas.,* 618 F.3d at 1161 (internal quotation marks and brackets omitted). Regarding the first factor, while it is not dispositive, "the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *Id.* at 1096. Defendants have

made no argument that being required to litigate in Colorado would violate notions of fair play and substantial justice. However, other courts in this district have held a defendant's use of Amazon.com when operating a commercial business provides a basis for a court's exercise of personal jurisdiction. *See Cornice Techs., Inc.,* 2005 WL 1712124. Thus, the Court cannot perceive how requiring Defendants to litigate in Colorado would be unfair or unjust.

Moreover, there is no dispute (at this stage) that the alleged injuries occurred in Colorado where the Plaintiff resides and seeks relief. The remaining factors do not persuade the Court to either position. Thus, the Court's consideration of the reasonableness factors demonstrates the Defendants have failed to present a compelling argument that requiring them to defend this case in Colorado would render jurisdiction unreasonable.

This Court recommends that Judge Moore find the Plaintiff has made a prima facia case that the Court should exercise specific personal jurisdiction over the Defendants in this case.

B.     Failure to State a Claim

Plaintiff seeks relief from Defendants based on seven claims: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) false advertising in violation of 15 U.S.C. § 1125(a)(1)(B); (4) common law trademark infringement; (5) common law unfair competition; (6) deceptive trade practices in violation of C.R.S. § 6-1-105; and (7) tortious interference with contract and business relations. The Court has construed Defendant's motion to include the dismissal of the Amended Complaint for Plaintiff's failure to state each and every claim. The Court will address each claim in sequence.

1.      *Claims 1, 2, 4, and 5*

For their first, second, fourth, and fifth claims, Plaintiff alleges Defendants are unlawfully

reselling Plaintiff's products in violation of common law principles and the Lanham Act. Plaintiff

specifically alleges violation of the following provisions of the Lanham Act:

(1) Any person who shall, without the consent of the registrant

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

To succeed under both claims for trademark infringement and unfair competition, Plaintiff

must prove (1) they have a protectable interest in the trademark(s), (2) Defendants used the

identical or similar trademark(s) in commerce, and (3) Defendants' use of the trademark(s) has

caused a likelihood of confusion.  *See Derma Pen LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120

(10th Cir. 2014).

The Court construes Defendants' argument as a challenge to the third element, for which Defendants claim there is no likelihood of confusion and they are protected by the "first sale" doctrine. "The essence of the 'first sale' doctrine is that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009) (the right of the producer to control distribution of its trademarked product does not extend beyond the first sale of the product). However, courts have recognized two exceptions to the "first sale doctrine": (1) "material difference" and (2) "quality control." In *Beltronics USA, Inc.*, the Tenth Circuit held, "as other federal circuit courts have held, that the unauthorized resale of a materially different trademarked product can constitute trademark infringement." *Id.* Although it appears the Tenth Circuit has not yet adopted the "quality control" exception, at least one court in this District has: *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131, 136 (D.Colo.1980), which was cited with approval by Judge Ebel in *NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007). Plaintiff alleges it has sufficiently plead facts to establish each of the two exceptions.

a.      Quality Control Exception

Plaintiff argues that the complaint plausibly alleges the application of the quality control exception for Claims 1, 2, 4, and 5. Under the quality control exception, the resale of a trademarked product is not protected by the "first sale" doctrine if the manufacturer has established quality control practices and the alleged infringing products are not subject to those quality controls. *See Adolph Coors Co.*, 486 F. Supp. at 136 (the court found liability for unfair competition when "customers [we]re likely to be confused" by the defendant's unauthorized marketing and distribution of Coors beer, and Coors could be injured because customers "will hold Coors

responsible for any loss of high quality resulting from defendant's acts."). To overcome Defendants' motion, the Plaintiff must allege: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the trademark. *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996).

For purposes of this analysis, the Court adopts Judge Ebel's cogent summary of the Plaintiff's allegations, which, in his case, are identical to those alleged here:

> Plaintiff requires authorized distributors who sell products online to identify themselves clearly to consumers so that, if consumers have concerns about the quality or a defect in a product, consumers will know who to contact for assistance; to inspect products they receive in order to remove from their inventory any defective or damaged good before it reaches a consumer; to store products in specified ways to prevent damage; to ship products themselves, and not to allow third parties to fulfill orders on behalf of the authorized online distributor; and not to repackage products. Defendants, on the other hand, do not follow these quality controls; they sell anonymously on Amazon; they do not maintain their own inventory of products but instead allow Amazon to store the products Defendants are reselling and allow Amazon to fulfill Defendants' orders for products. Specific consumers have complained that through anonymous online purchases, they have received Otter products that are defective, of poor quality, have been repackaged, and are in "used" condition despite being sold as "new."

*Otter Prods., LLC*, No. 19-cv-00626-DME, at 8-9. In addition, Plaintiff alleges that

> Defendants' unauthorized sale of products bearing the PopSockets Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine PopSockets products, when, in fact, they are not. Defendants' unauthorized sale of products bearing the PopSockets Trademarks infringes on the PopSockets Trademarks and diminishes their value.

Am. Compl. ¶¶ 129-130. These facts taken together as true are sufficient at this stage to establish the "quality control" exception to the first sale doctrine.

b.      Material Difference Exception

Plaintiff alleges Defendants are not authorized sellers and, therefore, Plaintiff's products are sold by Defendants without the original manufacturer's warranty. Courts have recognized that material differences may include warranties associated with goods at issue. *Beltronics USA, Inc.*, 562 F.3d at 1072.  In support of their allegations, Plaintiff includes reviews of customers claiming the products they purchased were defective, poor quality, and *falsely stated the products came with a warranty*.  Taking the allegations as true for this analysis, the Court finds Plaintiff has sufficiently alleged that the material difference exception applies to overcome the "first sale" doctrine. The Court recommends that Judge Moore deny Defendants' motion to dismiss Claims 1, 2, 4, and 5 for failure to state a claim.

2.      *Claim 3*

Based on the same arguments proffered for Claims 1, 2, 4, and 5, Plaintiff asserts the complaint states a plausible claim against the Defendants for false advertising under the Lanham Act, which provides in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> . . .
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).  To plausibly state a false advertising claim, Plaintiff must allege (1) defendant made materially false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by

another, or (b) the characteristics of the goods or services; and (4) that injure the plaintiff.  *Digital Ally, Inc. v. Util. Assocs., Inc.*, 882 F.3d 974, 978 (10th Cir. 2018) (quotation omitted).

As already discussed, Plaintiff alleges that Defendants falsely advertised that the products they were reselling came with the manufacturer's original warranty when, in fact, they did not, which caused confusion, led to poor reviews, and harmed Plaintiff's reputation and sales.  The Court finds these allegations taken as true plausibly state a claim for false advertising under the Lanham Act.  The Court respectfully recommends that Judge Moore deny Defendants' motion to dismiss Claim 3.

3.     *Claim 6*

For this claim, Plaintiff alleges Defendants engaged in deceptive trade practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*  Plaintiff specifically alleges Defendants claim their products come with a manufacturer's warranty and are subject to PopSockets' quality-control procedures, when in fact they do not. As discussed above, Plaintiff's allegations sufficiently allege the Defendants' products do not come with a warranty and are not subject to PopSockets' quality-control procedures. The Court recommends Judge Moore find Plaintiff plausibly alleges this claim pursuant to Rule 12(b)(6) analysis.

4.     *Claim 7*

Finally, Defendants argue that Plaintiff alleges only conclusory statements to meet the required elements of a claim for tortious interference. Additionally, Defendants argue they are not parties to any agreement with PopSockets and are merely acting in their own economic self-interest.

Under Colorado law, "[a] plaintiff cannot be entitled to relief on a claim of intentional interference with contract unless he alleges and proves that the defendant intentionally and

improperly induced a party to breach the contract or improperly made it impossible for a party to perform." *Warne v. Hall*, 373 P.3d 588, 595 (Colo. 2016). The Colorado Supreme Court has indicated that, "[b]ecause it is so clearly dependent upon context and circumstances, we have never attempted to rigidly define 'improper' for all purposes of interference with contract." *Id.* at 596. But the Court considers such factors as the nature of the actor's conduct, the actor's motive, the interests in the other with which the actor's conduct interferes, the interests being advanced by the actor, the social interests in protecting the freedom of action of the actor and the contractual interest of the other, the proximity or remoteness of the actor's conduct to the interference, and the relation between the parties. *Id.* (citing restatement (Second) of Torts § 767 (Am. Law Inst. 1975)). Considering those factors here, and in addition to those allegations already referenced, Plaintiff has sufficiently alleged that Defendants acted improperly in interfering with Plaintiff's contracts with its authorized distributors, including the terms of the contracts with their authorized distributors that Defendants induced those distributors to breach. Moreover, Plaintiff plausibly alleges it had agreements with its authorized distributors that precluded sales to any unauthorized reseller; Plaintiff informed Defendants of these agreements; Defendants thereafter induced Plaintiff's authorized sellers to sell Plaintiff's products to Defendants for resale, contrary to those agreements, by not disclosing Defendants' intent to resell those products; and this has harmed Plaintiff. Am. Compl. ¶¶ 151-168; *see also Otter Prods., LLC*, No. 19-cv-00626-DME, at 13. The Court finds these allegations, considered together and taken as true, are sufficient to meet the plausibility standard under Rule 12(b)(6).

Furthermore, the Court construes Defendants' argument that they are acting in their own economic self-interest as invoking the "competitor's privilege." The doctrine of "competitor's privilege" is an affirmative defense to an intentional inference claim. However, that defense is

available only against claims for interference with prospective contracts or contracts terminable at will, which are not at issue in this case. *See Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1196-97 (Colo. App. 2009). Defendants have not shown the competitor's privilege defense applies here. This Court recommends that Judge Moore deny Defendants' motion to dismiss Claim 7.

C.   Motion for Leave File Sur-Reply

The purpose of a surreply is to afford "the nonmoving party ... an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). According to the Tenth Circuit, "new material" means "new evidence and new legal arguments" raised in the movant's reply brief. *Id.* In this case, the Defendants' reply brief did not raise any new substantive evidence or legal arguments. The Court did not rely on any information included in the parties' briefing of the motion for leave to file surreply. Thus, the Court recommends that Judge Moore deny as moot Plaintiff's motion for leave to file surreply.

**CONCLUSION**

Plaintiff has proffered sufficient evidence to demonstrate this Court has specific personal jurisdiction over the Defendants, who purposefully directed product sales at Colorado, and the Plaintiff's claims arise out of those sales. Further, the 66-page, 311-paragraph Amended Complaint plausibly alleges the Plaintiff's seven claims for relief against Defendants. For these reasons, the Court respectfully recommends that the District Court **deny** Defendants' Motion to Dismiss [filed May 17, 2019; ECF 15] and **deny as moot** Plaintiff's Motion for Leave to File Sur Reply [filed September 4, 2019; ECF 42.[2]

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to

Dated at Denver, Colorado this 4th day of November, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).